1  Michael W. De Vries (SBN 211001)
   michael.devries@kirkland.com
2  Justin Singh (SBN 266279)
   justin.singh@kirkland.com
3  KIRKLAND & ELLIS LLP
   333 South Hope Street
4  Los Angeles, California 90071
   Telephone:   (213) 680-8400
5  Facsimile:    (213) 680-8500

6  Adam R. Alper (SBN 196834)
   adam.alper@kirkland.com
7  KIRKLAND & ELLIS LLP
   555 California Street
8  San Francisco, California 94104
   Telephone: (415) 439-1400
9  Facsimile: (415) 439-1500

10 *Attorneys for Defendant*
   CISCO SYSTEMS, INC.

11

12            **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14                   **WESTERN DIVISION**

15 APOLLO FINANCE, LLC,                )   CASE NO.  2:15-CV-9696 RSWL
                                       )   (PJWx)
16            Plaintiff,               )
                                       )   **DEFENDANT CISCO SYSTEMS,**
17    vs.                              )   **INC.'S MEMORANDUM OF**
                                       )   **POINTS AND AUTHORITIES IN**
18 CISCO SYSTEMS, INC.,                )   **SUPPORT OF ITS RULE 12(B)(6)**
                                       )   **MOTION TO DISMISS FOR**
19            Defendant.               )   **FAILURE TO STATE A CLAIM**
                                       )
20                                     )   Hon. Ronald S.W. Lew
                                       )   Date: March 15, 2016
21                                     )   Time: 10:00 a.m.
                                       )   Crtrm.: 21
22 ─────────────────────────────────── )

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.  The '038 Patent ........................................................................2

    B.  Procedural Summary of this Action ........................................4

III. LEGAL STANDARDS .........................................................................5

    A.  Patent Eligible Subject Matter Under 35 U.S.C. Section 101 .............5

    B.  Fed. R. Civ. Proc. 8 Requires Factual Allegations Supporting A Plausible Claim For Relief ........................................................8

IV. ARGUMENT........................................................................................9

    A.  The '038 Patent Claims Unpatentable Subject Matter Under *Alice* And Is Invalid..................................................................9

        1.  The '038 Patent claims the abstract idea of teaching remote learners. ..........................................................................9

        2.  The '038 Patent claims do not recite an inventive concept. .....14

    B.  The Complaint Should Be Dismissed Because It Does Not Satisfy the Rule 8 Pleading Standard Under *Iqbal* and *Twombly* ........................20

        1.  The legislative history behind abrogating Rule 84 establishes that pleading according to Form 18 is insufficient. ..................21

        2.  Apollo's Complaint must be dismissed because it fails to satisfy the *Iqbal-Twombly* pleading standard......................................22

V.  CONCLUSION...................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ..................................................................................passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 1, 8, 21, 22

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   133 S. Ct. 2107 (2013) ....................................................................................... 5

*Avocent Sports Tech., Inc. v. Garmin Int'l, Inc.*,
   No. C 11-04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012) ...........................21

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................2, 8, 25

*Bilski v. Kappos*,
   561 U.S. 593 (2010) .............................................................................5, 12, 19, 20

*Boar's Head Corp. v. DirectApps, Inc.*,
   No. 2:14-CV-01927–KJM–KJN, 2015 WL 4530596 (E.D. Cal. July 28, 2015) ............8

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ................................................................... 12, 16

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
   No. C 12-04182 WHA, 2013 WL 245026  (N.D. Cal. Jan. 22, 2013) ..........................8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1348 (Fed. Cir. 2014) ....................................................7, 10, 14, 17

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) .................................................................9, 17, 20

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ................................................................... 17, 18

*Diamond v. Diehr*,
   450 U.S. 175 (1981) .............................................................................................5

*Digitech Image Techs.v. Elecs. Image Techs., LLC*,
   758 F.3d 1344 (Fed. Cir. 2014) ...........................................................................9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ................................................................................8

*Eclipse IP LLC v. McKinley Equip. Corp.*,
   No. SACV 14-154-GW (AJWX), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ............7

*I/P Engine, Inc. v. AOL Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014) ...................................................................... 7

*Ill. Tool Works Inc. v. Elektromanufaktur Zangenstein Hanauer GmbH & Co. KGaA*,
   No. 11–CV–262–JPS, 2011 WL 6002967 (E.D. Wis. Nov. 30, 2011) ........................ 21

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ............................................................................ 21

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ................................................................... 7, 10, 20

*Intellectual Ventures I LLC v. Symantec Corp.*,
   100 F. Supp. 3d 371 (D. Del. 2015) ..................................................................... 20

*Intellectual Ventures I, LLC, v. Motorola Mobility LLC*,
   81 F. Supp. 3d 368 ............................................................................................ 17

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ............................................................................. 7

*IpLearn, LLC v. K12 Inc.*,
   76 F. Supp. 3d 525 (D. Del. 2014) ......................................................... 6, 10, 12, 13

*IPLearn-Focus, LLC v. Microsoft*,
   2015 WL 4192092 (N.D. Cal. July 10, 2015) ........................................... 6, 12, 16, 18

*Macronix Int'l Co., v. Spansion Inc.*,
   4 F. Supp. 3d  797 ............................................................................................ 23

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) .......................................................................... 5, 6, 11, 14

*Medsquire LLC v. Spring Med. Sys. Inc.*,
   No. 2:11–cv–04504–JHN–PLA, 2011 WL 4101093 (C.D. Cal. Aug. 31, 2011) 8, 22, 25

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   No. 2015-1415, 2016 WL 362415, --- F.3d ---- (Fed. Cir. Jan. 20, 2016) ....... 1, 6, 15, 18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   No. C-12-1233 EMC, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012)
   *aff'd*, 788 F.3d 1359 (Fed. Cir. 2015) ...................................................... 7, 16, 18

*Open Text S.A. v. Box, Inc.*,
   78 F. Supp. 3d 1043 (N.D. Cal. 2015) ........................................................ 6, 13, 15

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) .................................................................. 10, 19

*Proxyconn Inc. v. Microsoft Corp.*,
   No. SACV 11-1681 DOC (ANx), 2012 WL 1835680 (C.D. Cal. May 16, 2012) ........... 9

*Ruiz Rivera v. Pfizer Pharm., LLC*,
   521 F.3d 76 (1st Cir. 2008) ................................................................................. 25

*Timeplay, Inc. v. Audience Entm't LLC*,
   No. CV15–05202 SJO (JCx), 2015 WL 9695321 (C.D. Cal. Nov. 10, 2015) ...............10

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .................................................................................passim

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015) ...................................................................................14

*Wolf v. Capstone Photography, Inc.*,
   No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) ......................passim

*Ziemba v. Incipio Techs, Inc.*
   No. 13-5590 (JLL), 2014 WL 4637006 (D.N.J. Sept. 16, 2014) ......................22, 23, 25

**Statutes**

35 U.S.C. § 101 ..............................................................................................................passim

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 8

Fed. R. Civ. P. 8 ...................................................................................................................8

Fed. R. Civ. P. 84 .................................................................................................................21

## I.      INTRODUCTION

Plaintiff Apollo Finance, LLC's ("Apollo's") Complaint against Defendant Cisco Systems, Inc. ("Cisco") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for two independent reasons.

First, the claims of United States Patent No. 8,435,038 (the "'038 Patent") are invalid under 35 U.S.C. § 101 because they claim patent-ineligible subject matter. Applying the Supreme Court's recent guidance in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ("Alice"), the '038 Patent is directed to the abstract idea of teaching students at geographically separate locations, which the patent refers to as "distance learning."   The claims of the '038 Patent implement that abstract idea using known, generically-described computer hardware and software.  That does not suffice, as a matter of law, to transform this abstract concept into patentable subject matter.  As the Supreme Court explained in *Alice*, "merely requiring generic computer implementation fails to transform [an] abstract idea into a patent-eligible invention."  *Id.* at 2352.  The '038 Patent—which issued in 2013, more than a year before *Alice* was decided—is precisely the type of patent that would never issue today under *Alice*.  *See, e.g., Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, No. 2015-1415, 2016 WL 362415, at *4–*9, --- F.3d ---- (Fed. Cir. Jan. 20, 2016) (affirming Judge Guilford's ruling finding a computer-implemented invention patent invalid under *Alice* and noting that *Alice* changed the law regarding patentability of computer-implemented inventions).  Given the straightforward nature of the '038 Patent and the clear applicability of *Alice* to the patent, resolving this threshold issue through a motion to dismiss—before unnecessary time and expense is spent on further proceedings—is entirely appropriate, as numerous courts have recognized.

Second, Apollo's bare-bones Complaint, which only vaguely alleges patent infringement by a plethora of Cisco products without any meaningful explanation, fails to comply with the pleading standards required by Federal Rule of Civil Procedure 8 and the Supreme Court's guidance in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("Iqbal") and *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("Twombly").  The Complaint is devoid of necessary factual allegations supporting Apollo's infringement claims, instead relying on mere recitals of the elements of a patent infringement claim, without alleging necessary supporting facts.  Apollo's Complaint therefore fails to provide Cisco with fair notice of Apollo's claims and should be dismissed for this additional reason as well.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The '038 Patent

The '038 Patent, entitled "Methods and Systems for Teaching a Practical Skill to Leaners at Geographically Separate Locations," was filed on October 17, 2006 and issued on May 7, 2013.  (Dkt. 1-1 ('038 Patent).)  Consistent with the title, the Abstract describes the '038 Patent as concerning "[a] method for teaching a practical skill to a plurality of learners at geographically separate locations." (*Id.* at Abstract.)

The specification of the '038 Patent explains that it "relates generally to distance learning" and describes "methods and systems for teaching a practical skill to students, employees, or other learners at geographically separate locations." *Id.* at 1:7–10.  The patent describes a series of basic steps for teaching students at geographically separate locations, using video-enabled computers connected over a network.  (*Id.* at Abstract.) These steps include: (i) receiving video feeds from learners; (ii) displaying those video feeds; (iii) allowing learners to submit questions; (iv) selecting a learner for individualized instruction; and (v) establishing private communication between the teacher and selected learner. (*Id.* at Figs. 9, 11, 8:26–65.)  Figure 1 illustrates the patent's "system for teaching a practical skill to learners at geographically separate locations":





FIG. 1

The patent's specification is extremely clear that its system can use any one of a number of types of generic computer hardware and software, which the patent repeatedly admits were known before the alleged invention of the '038 Patent.  For example, the patent explains the alleged invention can be practiced using any type of computer:  "In one embodiment, a teacher of the practical skill may also be provided (or have access to) a network-enabled computing device," which includes "a desktop or laptop computer, iTV system, PDA, or the like."  (*Id.* at 2:48–52.)  Likewise, the patent explains that the system can use any type of known computer video camera:  "Various webcams are known in the art, such as a Logitech® Quick-Cam®."  (*Id.* at 2:56–59.)  The patent also describes that the images transmitted by the system are transmitted using any type of known protocol: "[T]he video feeds 108 originating from each learner system 100 are transmitted over a network 116, such as a LAN, WAN, the internet, etc., to the teacher system 102."  (*Id.* at 3:39–42.)  These images are displayed using any type of known computer display device: "The display screen 118 may be embodied as a television screen, computer monitor, or the like."  (*Id.* at 3:50–51.)  And the patent also explains

that its system can use "[s]ystems for allowing a viewer to pause, rewind, and fast forward received video signals, such as Tivo®, [which] are known in the entertainment art." (*Id.* at 7:32–35.)

### B.   Procedural Summary of this Action

Apollo filed this action for patent infringement on December 17, 2015 and served the Complaint on Cisco on December 23, 2015. (Dkts. 1, 9.)  The parties filed a joint stipulation to extend Cisco's time to answer, move, or otherwise respond to the Complaint by 30 days. (Dkt. 9.)  This Court granted the stipulation and extended Cisco's time to respond to February 12, 2016. (Dkt. 10.)

Apollo's Complaint includes only a single claim against Cisco.  Apollo alleges that Cisco "has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '038 Patent by producing using, selling, and/or offering for sale . . . the Accused Products." (Dkt. 1 ¶ 15.)  The Complaint alleges that Cisco "practices the methods as claimed by the '038 Patent through the production, use and sale of the Cisco WebEx product and related products." (*Id.* ¶ 12.)  Though the Complaint uses this description to define the "Accused Products," it does not identify which specific "WebEx product" or "related products" are alleged to infringe, or why. (*Id.*)  The Complaint contains no other facts regarding the circumstances of Cisco's alleged infringement of the '038 Patent, such as descriptions of any functionality that could plausibly meet the limitations of the claims or any comparison of the claims to the Accused Products. (*See generally id.*)  The Complaint also does not identify any claim or product to which the doctrine of equivalents applies, although the pleading invokes "the doctrine of equivalents" in its assertion against Cisco. (*Id.* ¶ 15.)

On February 1, 2016, the parties met and conferred over this motion.  With respect to the Section 101 invalidity issues, counsel for Apollo indicated that no agreement could be reached.  With respect to the Rule 8 pleading standards, counsel for Apollo indicated that Apollo would provide a proposed amended complaint by February 5, 2016.  To date, no proposed amendment has been received.

## III.   LEGAL STANDARDS

### A.   Patent Eligible Subject Matter Under 35 U.S.C. Section 101

A patent may cover "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101 ("Section 101").   There is an important exception to the scope of patentable subject matter: subject matter is *not* patent eligible if it involves "[l]aws of nature, natural phenomena, [or] abstract ideas."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).   As the Supreme Court has explained, these three exceptions are "the basic tools of scientific and technological work" and are excluded from the domain of patent protection to avoid "considerable danger that the grant of patents would 'tie up' the use of such tools" and thereby "'inhibit future innovation premised upon them.'"  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013), (citing *Mayo*, 132 S. Ct. at 1293, 1305).   The Supreme Court has also explained that the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the [idea] to a particular technological environment' or adding 'insignificant postsolution activity.'"  *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (citing *Diamond v. Diehr*, 450 U.S. 175, 191–92 (1981)).

In 2014, the Supreme Court issued its decision in *Alice*, which considered the scope of patentable subject matter in the field of computer-implemented inventions.  In *Alice*, the Supreme Court explained that the "concern that drives [the] exclusionary principle" excluding laws of nature, natural phenomena, and abstract ideas from the scope of patentable subject matter "[is] one of preemption," and that "[m]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354 (citation omitted).   Employing that reasoning, the Supreme Court concluded that claims directed to an abstract idea, "which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention." *Id.* at 2352, 2357 (finding that a method and system "designed to facilitate

the exchange of financial obligations between two parties by using a computer system as a third-party intermediary" was unpatentable under Section 101).

Earlier this year, in a decision affirming a ruling from this District invalidating a patent to a computer-implemented invention under *Alice*, the Federal Circuit explained the "significance" and "impact" of the *Alice* line of decisions, noting the transformative nature of the *Alice* decision and explaining that even "a § 101 defense previously lacking in merit may be meritorious after *Alice*." *Mortg. Grader*, 2016 WL 362415, at *5, *8 (holding that a method and system for anonymous loan shopping, with the addition of "generic computer components," did not meet the Section 101 patentability standard).

A Section 101 analysis follows two steps. First, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1296–97). Second, if so, the court must determine if there is an "inventive concept"—that is, an "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (citing *Mayo*, 132 S. Ct. at 1294). In the past few years, courts have used this test to find a plethora of patents invalid, including patents seeking to claim ordinary activities implemented through the convenience of computers and the internet. *E.g., IpLearn, LLC v. K12* Inc., 76 F. Supp. 3d 525, 533 (D. Del. 2014) ("educational instruction and enhancing that instruction with a computer"); *IPLearn-Focus, LLC v. Microsoft*, 2015 WL 4192092, at * 4 (N.D. Cal. July 10, 2015) ("the watchful eye of a good teacher" implemented on a computer with sensors); *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1046 (N.D. Cal. 2015) ("network-based collaborative system"); *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *10 (C.D. Cal. Oct. 28, 2014) ("providing event photographs organized by participant, as applied using the internet,"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014) (advertising in connection with "distributing copyrighted media products over the Internet").

Whether claims are patent-eligible subject matter under Section 101 is a question

of law.  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).  As a result, courts, including those in this District, routinely analyze whether claims are directed to patent eligible subject matter under Section 101 at the motion to dismiss stage.  *See, e.g., Wolf*, 2014 WL 7639820, at *5–*6; *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-154-GW (AJWX), 2014 WL 4407592, at *6 (C.D. Cal. Sept. 4, 2014).  Indeed, it has expressly been noted that a number of "courts have considered § 101 eligibility at the motion to dismiss stage," with the Federal Circuit upholding dismissals based on Section 101 far more often than not, post-*Alice*.  *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118, at *5 (N.D. Cal. Sept. 11, 2012) *aff'd*, 788 F.3d 1359 (Fed. Cir. 2015); *see, e.g., Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *OIP Techs.*, 788 F.3d at 1360; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Ultramercial*, 772 F.3d  at 717.

As the Federal Circuit has explained, "there are clear advantages to addressing Section 101's requirements at the outset of litigation."  *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014).  "Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation."  *Id.*  In particular, "[a]ddressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business patents."  *OIP Techs.*, 788 F.3d at 1364 (Mayer, J., concurring).

Where claims are directed to an ineligible abstract idea, the Federal Circuit has "repeatedly sanctioned a district court's decision to dispose of them on the pleadings," and found it commendable to treat patent eligibility as a "threshold" issue by resolving it at the first opportunity.  *Id.* at 1365 (citation omitted).  Moreover, "[c]laim construction is not necessary" for a Section 101 analysis when the "basic character of the claimed

subject matter is readily ascertainable from the face of the patent." *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013); *Boar's Head Corp. v. DirectApps, Inc.*, No. 2:14-CV-01927–KJM–KJN, 2015 WL 4530596, at *4 (E.D. Cal. July 28, 2015) ("Claim construction has been found unnecessary when a patent's claims are 'straightforward' and '[n]o components are opaque such that claim construction would be necessary to flush out its contours.'") (citation omitted); *Wolf*, 2014 WL 7639820, at *6 ("associating identifying data" and "cataloging each of the photographs in a web-site server" did not require claim construction before resolving § 101 issue) (citation omitted).

## B.   Fed. R. Civ. Proc. 8 Requires Factual Allegations Supporting A Plausible Claim For Relief

Rule 8 of the Federal Rules of Civil Procedure ("Rule 8") requires that a complaint allege enough factual matter that, taken as true, would entitle the plaintiff to relief. *Twombly*, 550 U.S. at 555–556.  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* at 555 (internal quotations and citations omitted).  Mere labels and conclusions are insufficient to give fair notice and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

When a complaint falls short of the Rule 8 requirement, it is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "Factual allegations must be enough to raise a right of relief above a speculative level." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In particular, in patent cases, "with regard to Plaintiff's direct infringement claim, [a] court need not accept as true conclusory legal allegations cast in the form of factual allegations." *Medsquire LLC v. Spring Med. Sys. Inc.*, No. 2:11–cv–04504–JHN–PLA, 2011 WL 4101093, at *2 (C.D. Cal. Aug. 31, 2011) (citing *Twombly*, 550 U.S. at 555).

"Instead, a complaint must contain sufficient factual matter to make its allegations plausible." *Id.* "Applying *Iqbal* and *Twombly*, it is clear that Plaintiff's allegations [in a patent infringement complaint] are too conclusory when they merely allege that each Defendant is directly infringing 'by making, using, selling, offering to sell, or importing' technology that infringes Plaintiff's method patent." *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC (ANx), 2012 WL 1835680, at *4 (C.D. Cal. May 16, 2012).

## IV.  ARGUMENT

### A.  The '038 Patent Claims Unpatentable Subject Matter Under *Alice* And Is Invalid

Applying the two-step framework set forth in *Alice*: (1) each of the '038 Patent claims is directed to the abstract idea of teaching a practical skill to remote learners; and (2) the additional elements of the claims do not recite an inventive concept that transforms the abstract nature of the claims into patent-eligible subject matter.  The claims of the '038 Patent are not limited to any specific type of computer technology and provide no specificity about how the claimed abstract idea is to be implemented.  Instead, they merely apply the abstract idea in the field of networked computers, using well-known computer technology such as common computers, webcams, and displays, and routine steps naturally involved in teaching students remotely using computers.  At bottom, the '038 Patent threatens to preempt any and all uses of the claimed abstract idea in the field of computers.  Accordingly, the '038 Patent is invalid under *Alice* for claiming patent ineligible subject matter.

1.  <u>The '038 Patent claims the abstract idea of teaching remote learners.</u>

To determine whether a method is directed to an abstract idea, courts examine the claim as a whole to identify the underlying invention.  *Digitech Image Techs. v. Elecs. Image Techs., LLC,* 758 F.3d 1344, 1350 (Fed. Cir. 2014); *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011) (examining the "underlying invention").  As part of that analysis, courts will "examine the *purpose* of a challenged claim to determine whether it is abstract." *Timeplay, Inc. v. Audience Entm't LLC*, No.

CV15–05202 SJO (JCx), 2015 WL 9695321, at *4 (C.D. Cal. Nov. 10, 2015) (emphasis in original).  An abstraction is "an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 714.

All of the claims of the '038 Patent are directed to the abstract idea of teaching a practical skill to remote learners, a concept which has no concrete or tangible form in the claims.  (Dkt. 1-1 at 1:7–10 ("This disclosure relates generally to distance learning and, more particularly, to methods and systems for teaching a practical skill to students, employees, or other learners at geographically separate locations.").)  Claim 1, which is representative of the patent's other claims,[1] recites a "method for teaching a practical skill to a plurality of learners at geographically separate locations."  (*Id.* at 9:30–31.)  The elements of the claim cover simple, routine steps that flow naturally from a typical interaction between a teacher and a remote learner interacting over networked computers.  Claim 1 includes the steps of (1) "receiving" video feeds from learners at least partially depicting both the learner and a subject on which the learner is demonstrating the practical skill; (2) "displaying" the video feeds on the teacher's computer; (3) receiving "private questions" from learners; (4) "selecting" one of the learners for private instruction; (5) "responding" to the private questions; and (6) "annotating" video of the

---

[1] In a Section 101 analysis, "addressing each claim of the asserted patents" is "unnecessary" and utilizing a representative claim to analyze all claims is typical.  *Content Extraction*, 776 F.3d 1343 at 1348; *Alice*, 134 S. Ct. at 2359-60.  The *Alice* analysis for claim 1 also applies equally to independent claims 30 and 59, and also to the dependent claims, as noted below.  Where claims are "essentially the same invention, differen[t] [] only in that [one claim] is a method claim and [another claim] is an apparatus claim of a 'computer readable medium' including 'computer program code' to perform nearly every step" from the method claim, the difference between the claims is only one of terminology.  *IpLearn*, 76 F. Supp. 3d at 532; *see also Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014) (analyzing system and method claims as one).  The '038 Patent follows this template, reciting in independent claim 30 the same steps of claim 1, prefaced with a reference to a "non-transitory computer-readable medium." (Dkt. 1-1 at 11:35-67.)  Independent claim 59 is substantially similar, adding a "demonstration video feed" from the teacher's location and limiting its practice to the field of cosmetology. (*Id. at* 14:24-58.)  "An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Intellectual Ventures I v. Capital One*, 792 F.3d at 1366.  And the dependent claims likewise recite minor variations on the abstract idea of teaching remote learners.

10

student's work.  (*Id.* at 9:30–64, Fig. 9; *see also* Figs. 10–13 (summarizing the other elements of claim 1 and the dependent claims).)  The claim does not require specialized computer equipment or specify that particularized computer technology must be used to perform these routine steps.

Through the use of generic computers, these steps are directed to "'well-understood, routine, conventional activit[ies].'"  *Alice*, 134 S. Ct. at 2359 (citing *Mayo*, 132 S. Ct. at 1294).  Teaching (and observing) students has been practiced by humans for thousands of years, as has the concept of receiving questions from learners and responding to those questions.  "Annotating" the work of learners and providing feedback has likewise been performed by humans for millennia, such as with chalk, a blackboard, and notes.  That the remote teaching concept claimed in the '038 Patent (like other unpatentable abstract ideas) has real-life analogues leaves no doubt that the '038 Patent is directed to an abstract idea.  *See, e.g., Wolf*, 2014 WL 7639820, at *10 (comparing an online photo system to matching and mailing photographs).  Take, for example, a correspondence class where a learner sends homework via mail and the teacher responds to the learner with individualized instruction.

"That generic computer technology"—here, computers with known video camera and networking technology—"allows for a more efficient process does not confer patent eligibility."  *Id.* at *13.  Indeed, the Supreme Court's decision in *Alice* made clear that adding known computer technology to a longstanding human practice does not change the abstract nature of the claims.  *Alice*, 134 S. Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *see also Wolf*, 2014 WL 7639820, at *11 ("[I]f the remaining 'concrete' steps [of computer implementation] are sufficient to remove the patents in suit from the realm of an abstract idea, it seems any process involving computers would pass the test.").  The claims of the '038 Patent cover nothing more than practices that have been known and used since long before the patent, only they happen to be implemented using generic, known computer technology.  Nowhere does the patent specification assert that

any of these practices, alone or in combination, are themselves new. The claim limitations of the '038 Patent, such as those directed to receiving video or sending text messages, are simply "'attempt[s] to limit the use of [the idea] to a particular technological environment.'" *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (citing *Alice*, 134 S. Ct. at 2358). Such field of use restrictions have "long been held insufficient to save a claim" or to "make the concept patentable." *Id*. at 1355; *Bilski*, 561 U.S. at 612.

On facts remarkably similar to those presented here, courts have readily found patent claims directed to "educational instruction and enhancing that instruction with a computer" to claim an abstract idea. *See IpLearn*, 76 F. Supp. 3d at 533; *see also IPLearn-Focus*, 2015 WL 4192092, at * 4 (finding claims directed to the "watchful eye of a good teacher" to be abstract). In *IpLearn*, which involved a patent that the court described as being directed to "the abstract idea of instruction, evaluation, and review," the court found that the computer-related "steps [of that patent] are an abstraction, addressed to fundamental human behavior related to instruction, which is apparent when the steps are summarized without their generic references to computers and networks." *IpLearn*, 76 F. Supp. 3d at 533. Specifically, the patent in *IpLearn* followed "several steps directed at the abstract idea of instruction, evaluation, and review." *Id.* These included using a computer to "analyze[] the learner's test results using rules to determine a weakness in the learner's understanding," using a computer to "provide[] guidance to the learner," "access to individual areas of a subject over the Internet," "storing materials on a learner's understanding in a storage area that has materials regarding a learner," and a "report based on the analysis and a report format, regarding the learner's understanding . . . that is allowed to be presented by another computer connected through a network to the computer that performed the analysis." *Id.* at 532–533. None of the steps "taken individually, or taken collectively" were "sufficiently concrete" because they "represent an abstract idea of conventional everyday teaching that happens in schools across the country," despite "enhancing that instruction with a computer." *Id.*; *see Open Text*, 78 F.

Supp. 3d at 1047 (finding it proper to analyze a claim "[s]horn of its implementation-specific fleece" in determining whether it is abstract).  As in *IpLearn*, the steps of the '038 Patent are simply "addressed to the fundamental human behavior related to instruction." 76. F. Supp. 3d at 533.

Nor does the fact that the '038 Patent describes teaching using computers connected over the internet mean that the patent is not directed to an abstract idea.  As the Federal Circuit has explained, "use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter."  *Ultramercial*, 772 F.3d at 716 (finding claims abstract despite eleven steps for displaying online advertisements in exchange for access to copyrighted media); *see also Open Text* , 78 F. Supp. 3d  at 1047 (patent claimed the abstract idea of "providing a method for people to collaborate and share information" over the internet).  The *Ultramercial* court found that internet-specific steps such as "selecting an ad after consulting an activity log to determine whether the ad has been played less than a certain number of times" did not change the fundamental concept of the patent.  *Ultramercial*, 772 F.3d at 714–715.  Here, much like in *Ultramercial*, the claims of the '038 Patent all have a single abstract goal—teaching remote learners—despite containing internet-related and computer-related steps.

Likewise, the *Open Text* patent recited a system including claim elements such as a "network-connected server," "a workgroup creator on the server for receiving instructions from a primary user," "a messaging system for communicating existence of the dedicated network site to a selected ones of the list of secondary users," and memory "for storing information submitted by the primary and secondary users, wherein the stored information is accessible to the users in accordance with the predefined working relationship." 78 F. Supp. 3d at 1046.  Recitations of elements such as customizable sharing and messaging systems did not raise the *Open Text* patent above the realm of abstract ideas, however, and they should not do so here.  The claims of the '038 Patent are all inherently directed to the abstract idea of teaching remote learners, despite containing limitations directed to sending video and messages using unspecified

1  computer equipment.[2]

2          2.   <u>The '038 Patent claims do not recite an inventive concept.</u>

3      The second step requires "examin[ing] the elements of the claim to determine

4  whether it contains an inventive concept sufficient to transform the claimed abstract idea

5  into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quotation omitted).  Nothing

6  in the claims of the '038 Patent, considered individually or as an ordered combination,

7  amounts to an inventive concept sufficient to transform the abstract nature of the claims

8  into patent eligible subject matter.

9      Presenting an abstract idea, "while adding the words 'apply it,'" does not meet the

10  threshold of an inventive concept.  *Mayo*, 132 S. Ct. at 1294.  Considered "both

11  individually and as an ordered combination," the claim elements must do more than

12  provide "conventional steps, specified at a high level of generality." *Alice* 134 S. Ct. at

13  2350, 2357 (citing *Mayo*, 132 S. Ct. at 1300); *Ultramercial*, 772 F.3d at 709, 715 (finding

14  that adding routine additional steps, such as the use of the internet to advertising and

15  content distribution, do not transform an otherwise abstract idea into patent-eligible

16  subject matter).  Performing "conventional, routine, and well-known" actions such as

17  "arranging, storing, retrieving, sorting, eliminating, [or] determining" does "not transform

18  a general purpose computer into a specific machine." *Versata Dev. Grp., Inc. v. SAP

19  Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015).

20      Nor is the use of other generic components beyond a general-purpose computer

21  enough to supply an inventive concept.  *See Content Extraction*, 776 F.3d at 1348

22  (finding no "inventive concept" in the use of a generic scanner along with a general

23  computer, when performing "well-understood, routine, and conventional activities

24  commonly used in the industry").  "[G]eneric computer components such as an

25  _____

26  [2]  The dependent claims of the '038 Patent are merely slight variations of the independent claims or restrict the claim to a certain field of use, and are likewise directed to abstracted ideas. *See* Section IV(A)(2), *infra*.  A Section 101 analysis may dispose of such dependent claims using representative independent claims as examples, as noted above. *Content Extraction*, 776 F.3d 1343 at 1348; *Alice*, 134 S. Ct. at 2359-60.

27

28

'interface', 'network', and 'database' . . . do not satisfy the inventive concept requirement." *Mortg. Grader*, 2016 WL 362415, at *7; *see also Wolf*, 2014 WL 7639820, at *12 ("generic technological categories such as a 'computer network server,' a 'web-site server,' and a 'digital camera'" did not add inventiveness). Even devices with more specific application, such as "'a component worn by the sporting event participant … [that] trigger[s] a camera to take a photograph' by interfacing with 'a sensor' and can include 'a passive component,' a 'bar code,' an 'inductive circuit,' or an 'active component'," were "recitations of generic technology" insufficient to transform abstract claims into patent eligible subject matter. *Wolf*, 2014 WL 7639820, at *12.

Here, every element of the '038 Patent claims consists of nothing more than applying an abstract idea using a general-purpose computer and generic components. Each step is merely a ***functional*** description of a computer-enabled ***objective*** "with no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 714. No specific computer technology is specified, nor are the claims restricted to any particular way of performing the functional objectives they recite. The limitations from each of the independent claims merely describe a typical interaction between a teacher and a learner; they do not provide for specialized technological components or a particular configuration to separate them from what one would naturally do if teaching students remotely using networked computers. *See, e.g., Wolf*, 2014 WL 7639820, at *13 (even "painstaking[]" analogues to an online photo service using "low-tech tools," such as manual sorting and matching and a physical catalogue displayed in a physical location, demonstrated lack of an inventive concept). The claims of the '038 Patent at most reference generic components and devices: a "video feed," a "display screen," a "computer system," and a "communication channel," for example. (E.g. Dkt. 1-1 at claim 1, Figs. 9, 11, 8:26–65.) The limitations are examples of "implementation-specific elements [that] were known prior to the invention" and which are insufficient to supply inventiveness. *Open Text*, 78 F. Supp. 3d at 1048. Indeed, the '038 Patent admits these generically described computer technologies were known before the alleged invention of

1   the patent.

2         Specifically, the first two steps of "receiving" and "displaying" video feeds relate

3   to technology known in the art for well over a decade.  The specification itself recognizes

4   the routine nature of sending audio and video over the internet, acknowledging, for

5   example, that "[v]arious webcams are known in the art."  (Dkt. 1-1 at 2:57–59.)  "That a

6   computer receives and sends the information over a network—with no further

7   specification—is not even arguably inventive."  *buySAFE, Inc.*, 765 F.3d at 1355.  The

8   specification also acknowledges that the other hardware utilized is commonplace.  (Dkt.

9   1-1 at 1:56–62 (general-purpose computers may be used); 2:41–55 (systems may be run

10   on "desktop or laptop computer . . . iTV system, PDA . . . or the like"); 2:7–18

11   (acknowledging the internet); 2:56–67 (pointing out common display screens).)  When

12   the "entire premise of the patent[] is the ubiquity of standard computer technology 'at

13   home and in schools,'" specifying no "hardware or software beyond commonly available

14   computer processors, sensors, and displays," there is no inventive concept.  *IPLearn-*

15   *Focus*, 2015 WL 4192092, at *5 ("implement[ing] traditional teaching practices on a

16   generic computer platform" does not add inventive concept to abstract idea of teaching).

17         The next three steps—"receiving" a private question, "selecting" a learner, and

18   "responding" to a private question—also amount to nothing more than generically

19   described uses of computers and the internet to facilitate remote teaching.  Elements such

20   as these, including "'sending a first set of electronic messages over a network to devices,'

21   the devices being 'programmed to communicate,' [and] storing test results in a 'machine

22   readable medium,'" are examples of "'well-understood, routine, conventional activit[ies]

23   previously known to the industry.'"  *OIP Techs.*, 788 F.3d at 1363 (citation omitted).

24   Hence, these steps also do not add an inventive concept to the abstract idea in the claims.

25   Indeed, given the ubiquity of letters and phones, not to mention various firmly-

26   established forms of networked communications like email, chat rooms, and voice-over-

27   IP, the messaging system described in the '038 Patent cannot plausibly be described as

28   adding an inventive concept.

The final step, which involves annotating video of the student's work (step 6), again is a routine step flowing naturally from the abstract concept of teaching students remotely using computers. That idea, with clear real-life analogues, is nothing more than "collecting," "storing," and "reorganizing" data; hence, it does not and cannot add an inventive step to the claims. *Content Extraction*, 776 F.3d at 1347–48; *see also Intellectual Ventures I, LLC, v. Motorola Mobility LLC*, 81 F. Supp. 3d at 368 (citing *CyberSource*, 654 F.3d at 1375). Indeed, the claims are not limited to any specific technology for annotating the video; rather, the claims are directed to the ***idea*** of annotating a video in connection with remote teaching. Like the others, this step adds no inventive concept to the claims.

Tellingly, the claims of the '038 Patent are nothing like the claims of the only computer-implemented patent considered by the Federal Circuit post-*Alice* that was not found to be invalid under Section 101. In *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), the Federal Circuit confirmed the validity of a patent that claimed a "solution . . . necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." In *DDR*, the claims addressed a specific problem with "conventional functioning of an internet hyperlink protocol," in which the user "would be instantly transported away from a host's website" after clicking on an advertisement. *Id.* The proposed solution in the *DDR* patent included a specifically described system to deal with the "out-source provider" and to "construct and serve to the visitor a new, hybrid web page that merges content associated with the products of the third-party merchant with the stored 'visually perceptible elements' from the identified host website." *Id.* In *DDR*, the patent was *specifically* addressed to a problem with conventional implementation of HTTP protocol, a problem unique to the field of computers, and provided a new, inventive, specific solution, including technology for enabling "frames" within HTTP browsing windows.

The '038 Patent, in stark contrast to the patent considered in *DDR*, is not focused on a problem specifically arising in the realm of computer networks. To the contrary, the

'038 Patent centers on a "method for teaching a practical skill to a plurality of learners at geographically separate locations"—an age-old problem and certainly not one rooted in computer technology.  Similar to the patent at issue in *IPLearn-Focus v. Microsoft*, "this pedagogical issue does not exist exclusively or even predominantly in the computer realm." *IPLearn-Focus*, 2015 WL 4192092, at *6.

Nor is the '038 Patent "necessarily rooted in computer technology."  Unlike the patent considered in *DDR*, the claims in the '038 Patent do not "'purport[] to improve the functioning of the computer itself' or 'effect an improvement in any other technology or technical field.'"  *Mortg. Grader*, 2016 WL 362415, at *7 (citing *Alice*, S. Ct. at 2359).  In *DDR*, the patent at issue caused a computer network to operate in an unexpected and previously unknown manner by displaying a website in a frame instead of changing the website as a whole.  *DDR*, 773 F.3d at 1259.  The claims here instead rely on a "computer network operating in its normal, expected manner" —precisely the type of claims that do not pass muster under *Alice*.  *Id.* at 1258; *see also OIP Techs.*, 788 F.3d at 1363 ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible").  Furthermore, the invention in *DDR* had no apparent real-world analogue because its solution was necessarily built using functions unique to networking.  The invention claimed in the '038 Patent, on the other hand, is the generic implementation of an idea that could be accomplished in many other ways (*e.g.*, by phone, by mail, or in person).  Indeed, a court in this District noted this very distinction in *Wolf*, a case about a method for sorting, storing, and displaying searchable photographs online.  2014 WL 7639820, at *13.  As explained in that case, the fact that a person "in the pre-internet days" might have identified matches by hand and displayed images in "a physical catalog of images in a certain location—say, at a local running or photography store" instead of online—indicated a lack of "additional features" to constitute inventiveness, the court found.  *Id.*  Similarly in this case, there exist analogue alternatives to remote teaching that, although perhaps "done painstakingly" and with "low-tech tools," leave no doubt that the '038 Patent lacks an inventive concept

1   sufficient to transform the abstract nature of the claims. *Id.*

2   Finally, the '038 Patent fails the machine-or-transformation test. While the

3   "machine-or-transformation test is not the sole test" for patent eligibility under Section

4   101 and thus is not dispositive, it is nevertheless "a useful and important clue" to patent

5   eligibility. *Bilski*, 561 U.S. at 602–604 (test asks whether invention is patent-eligible by

6   virtue of being "tied to a particular machine or apparatus," or whether it "transforms a

7   particular article into a different state or thing"). The '038 Patent, by its own admission,

8   is directed to a method of teaching, not to the transformation of any one thing into

9   something else. And *Alice* and its progeny have established that "the mere recitation of a

10  generic computer" or generic networking devices (see above) does not satisfy this test.

11  *Alice*, 134 S. Ct. at 2358. That the '038 Patent fails the machine-or-transformation test

12  provides additional confirmation that it claims patent-ineligible subject matter.

13  The dependent claims of the '038 Patent fare no better in providing an inventive

14  concept. At bottom, "the dependent claims recite only slight variations of the

15  independent claims," attempt to claim basic types of human behavior such as

16  manipulating objects, or limit the method's practice to "a particular technological

17  environment." *Planet Bingo*, 576 F. App'x at 1007. The dependent claims therefore

18  provide no inventive concept that transforms the claims into something substantially

19  more than the abstract idea of remote teaching using networked computers. *Alice*, 134 S.

20  Ct. at 2358 (limiting the practice of a method to particular technological environment

21  cannot transform an abstract idea into a patentable invention); *Planet Bingo*, 576 F. App'x

22  at 1007  (a Section 101 analysis may dispose of dependent claims that are slight

23  variations on ineligible independent claims). They add minimal (if any) functionality to

24  the independent claims, and do not require specific, specialized computer technology for

25  performing the abstract steps recited in the independent claims.

26  First, capturing and transmitting a demonstration video (dependent claims 20, 25,

27  48, and 53) is merely a minor variation on the video feed transmission described in the

28  independent claims. Other dependent claims deal with text and audio messages (claims

8–15, 22, 35–43, 50), as well as storage, annotation, and transmission of video feeds (claims 16–19, 21, 23, 24, 26, 27, 44–47, 49, 51, 52, 54, 55), which are again slight variations of the methods recited in the independent claims.  Certain of the dependent claims (claims 2, 3, 31, 32, and 58) involve changing the interface or display (*e.g.* enlarging video on the display, pausing, rewinding, fast-forwarding).  These claims generally relate to an "interactive interface," as well as the "manipulation or reorganization of data," which are abstract ideas.  *Intellectual Ventures I v. Capital One*, 792 F.3d at 1370 (an "interactive interface limitation is a generic computer element" and thus not patent eligible); *Intellectual Ventures I v. Motorola*, 81 F. Supp. 3d at 368 (manipulating and storing data not patent eligible) (citing *CyberSource* 654 F.3d at 1375).

Finally, the remaining dependent claims (claims 4–7, 28, 33, 34, 56) are examples of human actions "directed to an abstract idea and [] not necessarily rooted in computer technology," or improper "field of use" limitations specific to cosmetology.  *Intellectual Ventures I LLC v. Symantec Corp.*, 100 F. Supp. 3d 371, 384 (D. Del. 2015); *Bilski*, 561 U.S. at 612 ("limiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable").  For example, claim 4 ("camera [that] is movable to view different portions of the subject") and claim 5 (a subject who "is placed on a rotatable base") add nothing of significance.  Claim 6 limits the "practical skill" to specific fields of use: "manicures, pedicures, application of artificial nails, hair cutting and styling, shampooing hair, cosmetic application, body hair removal, chemical hair relaxers or straighteners, permanent waves, coloring and highlighting hair, hair extensions or wig treatments."  But there is nothing inventive about applying the abstract concept of remote teaching using computers to the field of cosmetology.  These claims— like all others in the '038 Patent—also fail to add inventive concept and are thus invalid.

**B.    The Complaint Should Be Dismissed Because It Does Not Satisfy the Rule 8 Pleading Standard Under *Iqbal* and *Twombly***

Apollo's Complaint must also be dismissed because it provides no more detail than the recently abrogated Form 18 and is therefore insufficient under *Iqbal* and *Twombly*.

1.   The legislative history behind abrogating Rule 84 establishes that pleading according to Form 18 is insufficient.

Before its recent abrogation, Federal Rule of Civil Procedure 84 ("Rule 84") had been interpreted to provide that pleading direct patent infringement according to Form 18[3] was sufficient to withstand a motion to dismiss.  *See* Fed. R. Civ. P. 84.  After *Iqbal* and *Twombly* were decided, the Federal Circuit recognized a conflict between the pleading standards laid out in those cases and Form 18.  *See, e.g.*, *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (reasoning that any conflict between *Iqbal-Twombly* and Form 18 with respect to claims of direct infringement must be resolved in favor of Form 18 because "changes to the Federal Rules of Civil Procedure must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.").  Effective December 1, 2015, the Judicial Conference abrogated Rule 84 and, with it, Form 18.  *See* Fed. R. Civ. P. 84.  As a result, there is no longer any doubt that the *Iqbal-Twombly* standard applies to all claims of patent infringement, including claims of direct infringement.  *Iqbal*, 556 U.S. at 678; *Bill of Lading*, 681 F.3d at 1331–1332.[4]

Courts have consistently agreed that the notice pleading requirements of *Iqbal* and *Twombly* demand more than the threadbare conclusory allegations of Form 18.  *See, e.g.*, *Avocent Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *3 (N.D. Cal. Mar. 22, 2012) ("Form 18 does not provide adequate notice under the heightened pleading standards articulated in [*Twombly* and *Iqbal*].."); *Ill. Tool Works Inc. v. Elektromanufaktur Zangenstein Hanauer GmbH & Co. KGaA*, No. 11–CV–262–JPS, 2011 WL 6002967, at *2 (E.D. Wis. Nov. 30, 2011) ("[T]his court finds it is difficult to

---

[3]   Until its abrogation, Rule 84 provided Form 18 as an example for pleading a claim of direct patent infringement. *See* Fed. R. Civ. P. 84.  The substance of the rule had not been amended since 1946.  *Id.*

[4]   Because Form 18 only applied to claims for direct infringement, the sufficiency of claims of indirect patent infringement was always and continues to be judged under the *Twombly-Iqbal* standard.  *Bill of Lading*, 681 F.3d at 1336–37.

1   reconcile the guidelines set forth in *Twombly* and *Iqbal* with Form 18 as it does not cover

2   all manners of patent infringement."); *Medsquire*, 2011 WL 4101093, at *2 (holding

3   Form 18 insufficient under *Twombly* and *Iqbal*).   Together with the recent abrogation of

4   Form 18, the principle espoused by these cases demands that a complaint for patent

5   infringement "contain sufficient factual matter, accepted as true, to state a claim to relief

6   that is plausible on its face."  *Iqbal*, 556 U.S. at 678.

7          2.    Apollo's Complaint must be dismissed because it fails to satisfy the
8                *Iqbal-Twombly* pleading standard.

9          Apollo's Complaint must be dismissed because it fails to include necessary factual

10  allegations supporting Apollo's claim for patent infringement against Cisco.

11         Critically, Apollo's Complaint does not adequately identify the allegedly

12  infringing product and how that product allegedly infringes the '038 Patent.   *See*

13  *Medsquire,* 2011 WL 4101093, at *3 (allegation that defendant infringes "by making,

14  using, selling, and/or offering for sale its Care360 system, which embodies and/or

15  otherwise practices one or more claims" of the patent failed the *Iqbal-Twombly* standard);

16  *Ziemba v. Incipio Techs, Inc.* No. 13-5590 (JLL), 2014 WL 4637006, at *3 (D.N.J. Sept.

17  16, 2014) (pleading was insufficient where it failed to allege which products were subject

18  to each theory of liability or "*how* such products actually infringe any particular claims")

19  (emphasis in original).   Apollo merely alleges that "Defendant practices the methods as

20  claimed by the '038 Patent through the production, use and sale of the Cisco WebEx

21  product and related products."  (Dkt. 1 ¶ 12.)  The Complaint is devoid of any factual

22  allegations about *which* product or products within Cisco's suite of WebEx products

23  allegedly infringe, or *how* such product or products allegedly infringe the '038 Patent,

24  including by alleging what functionality Apollo contends applies to the claims of the

25  patent or which subset of features is implicated.  For example, although the '038 Patent

26  contains both method and apparatus claims, the Complaint does not clearly identify

27  whether the alleged infringement is of a method, apparatus, or both.  Likewise, the

28  Complaint vaguely references a "WebEx product and related products" as the "Accused

Products," but does not specify which WebEx product or which related products allegedly infringe the Asserted Patents, although the WebEx suite of products contains a number of different product lines with numerous different features. (*Id.*) Compounding the problem, not only does the Complaint fail to identify the particular "Cisco WebEx product" alleged to infringe, it then goes on to enlarge the scope of potentially infringing products by including "related products" as well. (*Id.*) And nowhere does Apollo include factual allegations tying any particular aspect of any particular Cisco product to the limitations of specifically identified claims of the '038 Patent. Such vague allegations are wholly insufficient to provide Cisco with adequate notice of Apollo's claims against it. *Twombly*, 550 U.S. at 555.

Similarly, the Complaint fails to include any factual allegations supporting Apollo's claim for infringement under the doctrine of equivalents. *Macronix Int'l Co., v. Spansion Inc.*, 4 F. Supp. 3d 797, 803–04 (dismissing infringement claims where it was not clear "what [was] alleged to be literally infringed and what [was] alleged to be infringed by equivalents."); *see also Ziemba*, 2014 WL 4637006, at *3. Here, as in *Macronix*, the Complaint alleges direct infringement "literally and/or under the doctrine of equivalents" without explaining which claims are alleged to be literally infringed and which are alleged to be infringed by equivalents, or why.[5] (Dkt. 1 ¶ 15.) The Complaint fails to notify Cisco of even a single claim alleged to be infringed under the doctrine of equivalents, let alone provide factual allegations supporting those claims.

Although Rule 84 was abrogated weeks before Apollo filed this action, the Complaint is nearly identical to (and in some cases less detailed than) even the now

---

[5] The *Macronix* court also held the allegations of literal infringement to be insufficient under *Twombly* and *Iqbal* because the complaint "simply allege[d] that each element of a cited claim [was] infringed and then parroted the claim language for each element." *Id.* Here, the Complaint falls short of affording Cisco proper notice of infringement allegations for the same reasons: no allegations comparing the claim limitations to particular Cisco products is provided. Moreover, whereas the deficient complaint in *Macronix* at least made an attempt to "parrot" the language of the patent claims it alleged were infringed, Apollo has not even done that, making no showing of which claims it alleges have been infringed or what language is implicated and why. Without more factual detail, the claims must be dismissed in their entirety.

23

obsolete Form 18:

| Apollo's Complaint | Form 18 |
|---|---|
| "On May 7, 2013, the United States Patent and Trademark Office ('USPTO') duly and legally issued United States Patent No. 8,435,038 ('038 Patent'), entitled 'METHODS AND SYSTEMS FOR TEACHING A PRACTICAL SKILL TO LEARNERS AT GEOGRAPHICALLY SEPARATE LOCATIONS. APOLLO is the assignee and owner of all right, title and interest in and to the '038 Patent . . . ." (Dkt. 1 ¶¶ 7–8.) | On _date_, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an _electric motor_. The plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent. (Declaration of Justin Singh In Support of Cisco's Motion To Dismiss ("Singh Decl.") Ex. 1 (Form 18) ¶ 2.) |
| "Upon information and belief, Defendant practices the methods as claimed by the '038 Patent through the production, use and sale of the Cisco WebEx product and related products." (Dkt. 1 ¶ 12.) | The defendant has infringed and is still infringing the Letters Patent by making, selling, and using _electric motors_ that embody the patented invention, and the defendant will continue to do so unless enjoined by this court. (Singh Decl. Ex. 1 ¶ 3.) |
| [The complaint fails to allege any facts related to marking. _See generally_, (Dkt. 1.)] | The plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all _electric motors_ it manufactures and sells and has given the defendant written notice of the infringement. (Singh Decl. Ex. 1 ¶ 4.) |

As shown above, the Complaint pleads nothing more, and in some cases less, than the basic elements of even the recently abrogated Form 18.  For instance, whereas Form 18 requires a plaintiff to identify the allegedly infringing product, *e.g.*, "electric motors," the Complaint does not identify which "WebEx product and related products" are alleged to infringe.  (Dkt. 1 ¶ 12.)  Because the Complaint pleads no more than, and in some instances less than, what is set out in Form 18, it does not comply with the requisite pleading standards and should be dismissed.

As a result of its deficient pleading, the Complaint fails to provide adequate notice to Cisco of the claims against it.  *Twombly*, 550 U.S. at 555.  Indeed, "[t]he fundamental purpose of our pleadings rules is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008).  Due to the deficiencies with Apollo's Complaint, Cisco is unable to reasonably investigate the products that allegedly infringe the claims of the '038 Patent.  And without an adequate understanding of which products are alleged to infringe, Cisco has no way of knowing which, if any, of numerous Cisco employees involved in the WebEx suite of products may have relevant knowledge or documents.  Because Apollo's allegation of infringement does nothing more than recite the bare elements of patent infringement, it need not be accepted as true in assessing the sufficiency of the complaint.  *Medsquire*, 2011 WL 4101093, at *3; *Ziemba*, 2014 WL 4637006, at *3.  Therefore, Apollo's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## V.   CONCLUSION

For the reasons stated above, Cisco respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.


DATED:  February 12, 2016              Respectfully submitted,

                                       */s/ Michael W. De Vries*
                                       Michael W. De Vries
                                       michael.devries@kirkland.com

1  Justin Singh
   justin.singh@kirkland.com
2  KIRKLAND & ELLIS LLP
   333 South Hope Street
3  Los Angeles, California 90071
   Telephone: (213) 680-8400
4  Facsimile: (213) 680-8500

5  Adam R. Alper (SBN 196834)
   adam.alper@kirkland.com
6  KIRKLAND & ELLIS LLP
   555 California Street
7  San Francisco, California 94104
   Telephone: (415) 439-1400
8  Facsimile: (415) 439-1500

9  *Attorneys for Defendant*
   CISCO SYSTEMS, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28